Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 1205 - 1 | **DATE** | 5/1/2003 |
| **CASE TITLE** | U.S.A. vs. MYR Group | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, Counts Two and Four of the indictment are dismissed. The indictment is dismissed as to MYR Group, Inc. This case is set for status on 5/14/03 at 9:30 a.m. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) X [For further detail see Memorandum Opinion and Order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 3cc USM number of notices | Document Number |
| | No notices required. | | |
| | Notices mailed by judge's staff. | MAY 0 2 2003 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | *EMB* docketing deputy initials | 22 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| MW6 | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Cause No. 02 CR 1205 |
| v. ) | Magistrate Judge Geraldine Soat Brown |
| ) | |
| MYR GROUP INC. and ) | |
| THE L.E. MYERS COMPANY ) | |
| Defendants. ) | |

**DOCKETED**
**MAY 2 - 2003**

## MEMORANDUM OPINION AND ORDER

A four count indictment was returned charging defendants MYR Group Inc. ("MYR") and its wholly-owned subsidiary The L.E. Myers Company ("L.E. Myers") with violating a section of the Occupational Safety and Health Act (the "Act"), 29 U.S.C. § 666(e), which provides:

> Any employer who willfully violates any standard, rule, or order promulgated pursuant to section 655 of this title, or of any regulations prescribed pursuant to this chapter, and that violation caused death to any employee, shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment for not more than six months, or by both; except that if the conviction is for a violation committed after a first conviction of such person, punishment shall be by a fine of not more than $20,000 or by imprisonment for not more than one year, or by both.

Specifically, the indictment charges that L.E. Myers was engaged in the repair and maintenance of high voltage power transmission lines on towers located in various locations in Illinois, and that Blake Lane and Wade Cumpston, two employees of L.E. Myers, died from injuries sustained by electrocution. Blake Lane died on or about December 28, 1999 while working on a tower in Mt. Prospect, Illinois. Wade Cumpston died on or about March 25, 2000 while working on a tower at Plainfield, Illinois. The indictment charges that L.E. Myers and MYR violated certain regulations promulgated by the Secretary of Labor pursuant to OSHA, causing the deaths of Lane

1

and Cumpston. L.E. Myers is charged with violating various safety standards. MYR is charged with violating two subsections of the regulations relating to training.

MYR has moved to dismiss the two counts of the indictment against it. As discussed herein, notwithstanding the tragic circumstances of Lane's and Cumpston's deaths, the indictment fails to set out any basis for criminal liability on the part of MYR. Therefore, Counts Two and Four of the indictment must be dismissed.

## THE INDICTMENT

The government acknowledges that the fact that MYR is the parent of a wholly-owned subsidiary that may be criminally liable for violations of the Act is not enough to make MYR itself subject to criminal liability. Instead, the government charges MYR with violating two regulations relating to the training of employees. The allegations relating to MYR are set out in ¶ 1(k) of the indictment, which states as follows:

> Defendant, MYR GROUP, INC., a Delaware corporation and an employer under the Act, was engaged in electrical repair and maintenance work through its wholly-owned subsidiary, THE L.E. MYERS COMPANY. Defendant, MYR GROUP, INC. was responsible for overseeing the safety program at each of its wholly-owned subsidiaries, including but not limited to THE L.E. MYERS COMPANY. Defendant MYR GROUP, INC. authored and published a Safety Manual and numerous Safety Alerts for the use of employees of THE L.E. MYERS COMPANY. Defendants, MYR GROUP, INC. and THE L.E. MYERS COMPANY were responsible for safety training, safety instruction and safety enforcement for employees of THE L.E. MYERS COMPANY.

(Capitalization in original.)

The indictment alleges that MYR violated the following regulations:

Employees shall be trained in and familiar with the safety-related work practices, safety procedures, and other safety requirements in this section that pertain to their respective job assignments. Employees shall also be trained in and familiar with any

2

> other safety practices including applicable emergency procedures . . . that are not specifically addressed by this section but that are related to their work and are necessary for their safety.

29 C.F.R. § 1910.269(a)(2)(i); and

> Qualified employees shall also be trained and competent in: (A) the skills and techniques necessary to distinguish exposed live parts from other parts of electric equipment; (B) the skills and techniques necessary to determine the nominal voltage of exposed live parts; (C) the minimum approach distances specified in this section corresponding to the voltages to which the qualified employee will be exposed; and (D) the proper use of the special precautionary techniques, personal protective equipment, insulating and shielding materials, and insulated tools for working on or near exposed energized parts of electric equipment.

29 C.F.R. § 1910.269(a)(2)(ii).

## DISCUSSION

MYR argues that no matter what its involvement in the training of L.E. Myers employees, it cannot be criminally liable because it had no duty to those employees. The Act and the regulations promulgated by the Occupational Safety and Health Administration ("OSHA"), MYR argues, create obligations of employers to their own employees, except for the limited exceptions discussed below. Although MYR is admittedly *an* "employer" as defined in the Act (29 U.S.C. § 652(5)), it was not *the* employer of Lane and Cumpston.

Section 654(a) of the Act provides:

> Each employer (1) shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees; (2) shall comply with occupational safety and health standards promulgated under this chapter.

The government argues that its case against MYR arises under § 654(a)(2). However, the government has not cited any precedent directly on point, that is, any case in which an entity that was

3

not the injured employee's employer, that provided training but did not have control of the work site, has been held liable for an OSHA violation, either civilly or criminally. Instead, the government argues that the indictment against MYR is proper under two theories: First, that MYR "created and controlled the hazard" to which Lane and Cumpston were fatally exposed; and second, that MYR was a "joint employer" of Lane and Cumpston. (Govt. Resp. at 2.)

Support for MYR's position that only the employee's employer has responsibility for ensuring that employees are properly trained and follow that training is found in the subsection of the OSHA regulation immediately following those cited in the indictment:

> *The employer* shall determine, through regular supervision and through inspections conducted on at least an annual basis, that each employee is complying with the safety-related work practices required by this section.

29 C.F.R. § 1910.269(a)(2)(iii) (emphasis added).

In adopting a final rule regarding electric power generation, transmission, and distribution OSHA stated:

> Paragraphs (a)(2)(i) and (a)(2)(ii) require employees to be trained. They do not specifically require employers to provide this training themselves or to repeat training already provided. Clearly, the plain language of the standard allows employees to be trained by other parties or to have been trained previously by their own employers. ...The employer is required, by paragraph (a)(2)(vii), to certify that each employee has been trained. ... Employers relying on training provided by previous employers are expected to take steps to verify that the employee has indeed received it.

59 Fed. Ref. 4320, 4341-2 (Jan. 31, 1994).[1]

Although OSHA expressly contemplated that training could be done by someone other than the employer, there is no discussion in the regulations or the comments regarding liability on the part

---

[1] The current text of 29 C.F.R. § 1910.269(a)(2)(i) and (a)(2)(ii) is unchanged from that adopted in 59 Fed. Reg. 4320, 4437 (Jan. 31, 1994).

4

of the person or entity doing the training. Rather, as OSHA stated, the regulations place the duty on the employer to "certify" and "verify" that the employee has been properly trained. Other regulations and comments also support the position that the employer, rather than the trainer, bears the duty of making sure that the employee is adequately trained. For example, 29 C.F.R. § 1910.269(a)(2)(i), requires the employees to be trained in safety requirements that "pertain to their respective job assignments." It is the employer, not the trainer, that determines the respective job assignment of any employee. Similarly, OSHA stated that if more than one set of work practices can be used to accomplish a task safely, the employee needs to be trained in only those work methods he or she is to use. 59 Fed. Reg. at 4341. It is the employer, not the trainer, that will determine the specific work practice used. OSHA also observed that "[f]requently, the conditions present at a jobsite can expose employees to unexpected hazards." *Id.* at 4343. Conditions at the work site must be determined before work is started. 29 C.F.R. § 1910.269(a)(3). Significantly, the indictment charges L.E. Myers, not MYR, with violation of that regulation. (Count I ¶ 2.)

The government argues that MYR can be criminally liable because it "created and controlled" the hazard at the work site that resulted in the deaths of the two employees. (Govt. Resp. at 6-7.) The government tries to bring this case within the line of cases, like *U.S. v. Pitt-Des Moines, Inc.*, 168 F.3d 976, 982 (7th Cir. 1999), adopting a doctrine which holds that "on multi-employer work sites, an employer who creates a safety hazard can be liable under the Act regardless of whether the employees threatened are its own or those of another employer on the site." In *Pitt-Des Moines*, the employees of a steel erection subcontractor improperly fastened steel beams in violation of an OSHA regulation. *Id.* at 980-81. As a result, a portion of the structure being erected collapsed, killing two workers, one of whom was not employed by the steel erection subcontractor. *Id.* at 981. The Court

5

of Appeals affirmed the conviction of the steel erection subcontractor for the death of both employees, finding a basis for liability with respect to the non-employee in §654(a)(2). The court discussed other decisions holding that "when an employer on a work site violates a safety regulation, it can face liability under the Act regardless of whether those exposed to the resulting danger were the employer's own employees." *Id.* at 982-83. Those decisions imply that "'once an employer is deemed responsible for complying with OSHA regulations, it is obligated to protect every employee who works in its workplace.'" *Id.* at 983, quoting *Teal v. E.I. DuPont de Nemours & Co.*, 728 F.2d 799, 805 (6th Cir. 1984). The court also noted the limitations of the multi-employer liability doctrine. "[T]he class of employees who will trigger liability under the multi-employer doctrine should be limited to those with regular access to the areas controlled or directly impacted by the employer accused of violating a safety regulation." *Id.* at 985.

The *Pitt-Des Moines* case is clearly distinguishable from the charges against MYR. The defendant in *Pitt-Des Moines* violated OSHA regulations that applied to it as an employer of employees on the work site. Specifically, the defendant failed to require its own employees to secure structural members with two bolts, and failed to train its own employees about the two-bolt requirement. *Id.* at 980-81. The defendant's violation *of its own OSHA obligations as an employer* created the hazard on the work site that resulted in two deaths. In the present case, MYR is not charged with violating any obligations to its own employees. The OSHA regulations that MYR is alleged to have violated relate to employees of L.E. Myers, not MYR.

Additionally, the government fails to explain how any deficiencies in the training provided by MYR "created" a hazard at the work site. When asked at oral argument on MYR's motion to identify the hazard at the work sites where Lane and Cumpston died, the government's counsel stated

6

that the hazard at the Mount Prospect site was a failure to test and take proper precautions regarding an energized wire, and the hazard at the Plainfield site was a failure to train employees regarding the risks of induced voltage and in the proper procedures to ground wires. The government seeks to characterize the hazard as the exposure of improperly trained employees to energized wires rather than simply, energized wires. What the government is describing, however, is the failure to take precautions regarding the hazards, not the hazards themselves, which were the energized wires. Nothing in the indictment suggests that MYR created the physical condition that constituted the hazards.

The government also cites the application of the multi-employer doctrine by administrative law judges in cases such as *Double A Industries, Inc.*, OSHRC No. 01-534, 2002 CCH OSHD ¶ 32,543 at 50,678 (Feb. 20, 2002). Unreviewed administrative decisions are not binding on the courts as precedent. *In the Matter of Establishment Inspection of Cerro Copper Products Co.*, 752 F.2d 280, 284 (7th Cir. 1985). The decisions cited by the government are unreviewed, and they are also unpersuasive. In the *Double A Industries* case, a defendant-contractor on a construction site was found liable for unsafe conditions under which the employees of its subcontractor was working, including the failure to train those employees to recognize hazards of working on roofs. *Id.* at 50,678. Although the employees at risk were not the defendant's employees, the administrative law judge found the defendant liable because it controlled the work site, knew the hazard existed and could have abated it. *Id.* at 50,681. The judge found that the defendant-contractor was contractually responsible for the construction, it provided all the materials, and its project manager oversaw and controlled the work of the subcontractor's employees. *Id.* Thus, the administrative law judge found that the defendant was a "culpable employer." *Id.*

7

The other administrative cases cited by the government are similar. *See, e.g., Southern Scrap Materials Co., Inc.* OSHRC No. 94-3393, 1998 CCH OSHD ¶ 31,492 at 44,672 (Oct. 24, 1997)("SSM [the defendant] had supervisor authority and control over the worksite. SSM purchased the scrap metal for processing. SSM directed the workers and selected the scrap metal to torch cut. SSM exercised control over the Thomas yard. SSM was in the best position to know the contents of the scrap metal, including the potential for lead exposure.")

In 1999, OSHA issued a directive clarifying its policy on multi-employer work sites. Occupational Safety and Health Administration, U.S. Department of Labor, *Multi-Employer Citation Policy*, CPL 2-0.124 (1999). In that directive, OSHA clarified the steps to determine whether an employer on a multi-employer work site incurred obligations as a "creating," "exposing," "correcting" or "controlling" employer. *Id.* at (X)(A)(1). A "controlling" employer was defined in the directive as one "who has general supervisory authority over the worksite, including the power to correct safety and health violations itself or require others to correct them." *Id.* at (X)(E)(1). The defendant in the *Double A Industries* case fits that definition.

Nothing in the indictment suggests that MYR was a "controlling employer" at the Mt. Prospect or Plainfield work sites. It is questionable whether the allegations of ¶ 1(k) that "MYR Group, Inc. was responsible for overseeing the safety program at each of its wholly-owned subsidiaries" and "Defendants, MYR Group, Inc. and the L.E. Myers Company were responsible for safety training, safety instruction and safety enforcement for employees of the L.E. Myers Company" satisfy the requirement of Fed. R. Crim. P. 7(c)(1): "a plain, concise, and definite written statement of the essential *facts* constituting the offense charged." (Emphasis added.) It is clear, however, that those allegations do not set out facts showing either that MYR created the hazard at the Mt. Prospect

8

and Plainfield sites or that MYR was a controlling employer at those work sites. On the contrary, ¶ 1(l) of the indictment states that L.E. Myers (not MYR) was engaged in the repair and maintenance of the high voltage power transmission lines at locations including Mt. Prospect and Plainfield. Indeed, the fact that the indictment charges L.E. Myers and not MYR with violating regulations relating to the conditions at the work site undercuts the argument that MYR can be held criminally liable as a "controlling employer."

The government's argument that MYR can be held liable as a "joint employer" of Lane and Cumpston is simply without foundation in law or fact. First, the government has provided no authority, not even an administrative decision, demonstrating that liability for OSHA violations, either civil or criminal liability, has been extended to an entity on the basis of a finding that it was a "joint employer." The cases cited by the government, *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking, Inc.,* 176 F.3d 1004 (7th Cir. 1999), *Bristol v. Bd. of Cty. Commissioners of Cty. of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002), and *Virgo v. Riviera Beach Assoc. Ltd.,* 30 F.3d 1350 (11th Cir. 1994), arise in the context of civil rights discrimination claims or labor-management disputes. (Govt. Resp. at 9-10.)

Secondly, that argument finds no support in the allegations of the indictment. The indictment alleges that Lane and Cumpston were employees of L.E. Myers. (Indictment ¶ 1 (m) and (n).) It does not allege that MYR was a "joint employer." The indictment does allege that L.E. Myers is an MYR subsidiary. However, being an employee of a subsidiary does not automatically render one an employee of the parent corporation; indeed, the presumption is the opposite. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir. 1993)("The doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts

have found otherwise only in extraordinary circumstances.") Even in the contexts in which the "joint employer" test has been applied, its application depends on specific facts about the relationship between the alleged joint employer and the employee, such as:

> "(1) supervision of the employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions."

*Teamsters Local Unions Nos. 75 and 200*, 176 F 3d at 1008, quoting *DiMucci Constr. Co. v. NLRB*, 24 F.3d 949, 952 (7th Cir. 1994). The indictment does not allege such facts. The government's argument that the indictment supports liability on the part of MYR as a joint employer is rejected.

MYR also argues that, in the event that 29 C.F.R. 1910.269(a)(2) could be interpreted to impose a duty on an entity that provides training who is not the employer of the injured employee, the "rule of lenity" would preclude imposing criminal liability in a novel application of the law. (MYR's Mem. Supp. at 10.) The government responds that the court in the *Pitt-Des Moines* case rejected the rule of lenity argument. 168 F.3d at 984. However, in the *Pitt-Des Moines* case, the defendant had violated OSHA regulations that clearly imposed a duty upon it toward its own employees; it was only the extension of the liability for that violation to the other employees on the work site that was novel in this Circuit. As discussed above, that is not the situation here. Furthermore, the principle of liability imposed there had been "routinely used" in other circuits to hold employers civilly liable for safety violations. *Id.*

In the present case, the government was asked to provide authority to support the imposition of criminal liability on an entity that provided training to the injured employee but was not the employer of the injured employee. The government was unable to provide a case on point, but cited *CH2M Hill, Inc. v. Herman*, 192 F.3d 711 (7th Cir. 1999). That case does not support imposing

10

criminal liability on MYR in this case. To start, in the *CH2M* case, the Court of Appeals *reversed* a fine imposed by an Occupational Safety and Health administrative law judge. *Id.* at 712. The court held that the responsibilities of the defendant-consulting engineer in that case did not constitute engaging in construction work so as to give rise to responsibility for the safety of the workers on the site, and therefore the firm could not be liable under 29 U.S.C. § 654(a)(2). *Id.* at 716. There was no suggestion in that case of criminal liability. Furthermore, the regulations discussed in the *CH2M* case are those applicable to the construction industry, which, as the court discussed, have an extensive history of administrative enforcement and are interpreted with a view toward other federal statutes relating to the construction industry. *Id.* at 718-19. Thus, the application of any standards discussed in that case to responsibility for the regulations at issue here is questionable.

## CONCLUSION

Judge Kanne observed in the *CH2M* case, "Whenever accidental death occurs, it is human nature to place blame." 192 F.3d at 711. The accidental deaths of Lane and Cumpston were tragic. However, a criminal charge must have a foundation in law establishing criminal responsibility. The indictment against MYR does not. Counts Two and Four of the indictment are dismissed, and the indictment is dismissed as to MYR Group Inc.

**IT IS SO ORDERED.**

**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED: May 1, 2003**